# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1972
_____

United States of America

*Plaintiff - Appellee*

v.

Demarcus Deandre Timmons

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Dubuque
_____

Submitted: January 17, 2020
Filed: February 24, 2020
_____

Before KELLY, MELLOY, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

Demarcus Timmons appeals from the revocation of his supervised release, arguing that the district court denied him the right to confront the key witness against him at his revocation hearing. We agree, so we reverse and remand for further proceedings.

I.

In February 2019, Timmons began serving a three-year term of supervised release following a conviction for possession of a firearm as a prohibited person. In April 2019, the probation office filed a petition to revoke release for drug-related violations. Shortly before the hearing was scheduled to take place, the probation office filed a supplemental petition alleging that Timmons was going to be charged in Iowa court with domestic assault and child endangerment for punching his former partner, Tonia Berry, in front of their children. That added Timmons's only Grade B violation and increased his recommended Guideline range to 12-18 months in prison.

At the hearing, which was continued until May, a Dubuque police officer testified that on the day of the alleged assault Berry made a 911 hang-up call and then two hours later texted her address to police. The Government introduced a body camera recording of her interview with the police on the day of the assault and images of her injuries. Timmons objected to the introduction of the body camera statement and asked the court to "do the balancing test from *United States v. Bell*, 785 F.2d 640 (8th Cir. 1986) on whether it should be admitted." Hr'g Tr. 7–8 (cleaned up).

The Government explained that the day before the hearing it provided the Dubuque police department with a subpoena for Berry. The district court found that the Government had attempted to serve Berry, although it was "probably borderline." *Id.* at 18. It also found Berry's recorded statement reliable because: (1) 911 calls are generally admissible as excited utterances, (2) it would be against the law for Berry to lie to the police, and (3) Berry had no reason to lie.

In her recorded statement, Berry said that Timmons had arrived at her house with another man to take their children to a birthday party and that she told them to leave. Berry said Timmons then hit her in the mouth in front of the children and left.

Timmons presented evidence contradicting Berry's account. A woman who drove Timmons to Berry's house testified that he was in the home for just a few minutes. Katwan Brown, who went into the house with Timmons, testified that he had been with Timmons the whole time and that there had been no physical altercation at all. Brown also testified that Berry had been upset with Timmons because they were no longer together and she threatened to have Timmons sent to jail. On cross-examination, a police officer acknowledged that two other individuals who lived in the house with Berry had not seen an assault. Finally, Timmons introduced Berry's previous Iowa conviction for lying to the police.

The district court found all of the violations in the original and supplemental petitions proven by a preponderance of the evidence. Regarding the domestic assault and child endangerment allegations, it credited the 911 hang-up call and Berry's recorded police statements. It found Timmons's witnesses not credible, in part because they had no explanation for Berry's injuries, and noted that Timmons had a 2014 conviction for domestic assault. It considered Berry's prior conviction irrelevant because it was for giving police officers a false name, not falsely reporting an assault.

The district court imposed a term of 16 months in prison, a sentence that was only within Timmons's Guidelines range because of the assault allegations. Timmons appeals, arguing that introducing Berry's out-of-court statements violated Federal Rule of Criminal Procedure 32.1 and his due process rights.

II.

"A revocation hearing is not a criminal trial, and a defendant on supervised release is not entitled to the full panoply of protections afforded by the rules of evidence." *United States v. Sutton*, 916 F.3d 1134, 1138 (8th Cir. 2019). That said, certain "minimum requirements of due process" apply in revocation proceedings.

-3-

*Morrissey v. Brewer*, 408 U.S. 471, 488–89 (1972). One requirement is the right to "confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Id.* Federal Rule of Criminal Procedure 32.1(b)(2)(C) implements this protection and requires the district court to provide defendants "an opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear."

Ordinarily, we review Rule 32.1 claims for an abuse of discretion, but where a defendant argues his due process rights were violated, we review *de novo*. *Sutton*, 916 F.3d at 1138. In assessing whether a defendant should have been allowed to confront an adverse witness, we balance his due process rights "against the grounds asserted by the government for not requiring confrontation." *Bell*, 785 F.2d at 642.

To show good cause for denying a defendant his confrontation rights, the Government must show that "confrontation is undesirable or impractical" and that "the evidence which the government offers in place of live testimony" is reliable. *Sutton*, 916 F.3d at 1139 (quoting *Bell*, 785 F.2d at 643). We will only reverse for error that is not harmless. *United States v. Black Bear*, 542 F.3d 249, 255 (8th Cir. 2008).

A.

The Government must provide a "reasonably satisfactory explanation for not producing [a] witness" in a revocation proceeding. *United States v. Martin*, 371 F.3d 446, 448 (8th Cir. 2004) (quotation omitted). Most often, we have been satisfied when a witness is located several states away. *See Martin*, 371 F.3d at 448; *see also United States v. Harrison*, 809 F.3d 420, 423 (8th Cir. 2015). That was not the case here. Berry lived in Iowa, where the hearing took place, at an address known to the Government. "Where the witness is located in the same state as the revocation hearing, [] procuring live testimony generally does not impose an inordinate burden on the government." *Sutton*, 916 F.3d at 1139.

There was no significant hurdle to procuring Berry's live testimony. A single failed attempt to subpoena her does not, as the Government claims, constitute a "reasonably satisfactory explanation." *See Sutton*, 916 F.3d at 1139 (not impractical to present witnesses because Government had made unsuccessful efforts to subpoena them). The Government distinguishes *Sutton* by arguing that the attempts to serve the witnesses in that case were less thorough than they were here. Even assuming that "better than *Sutton*" is the same as "reasonable"—and the Government has given us no reason to think that is the case—that argument is factually wrong. With respect to at least one of the witnesses in *Sutton*, the police made two attempts to serve a subpoena at two different addresses. *Id.* Here, only one attempt was made and even that one was "borderline."

In the alternative, the Government argues for the first time on appeal that confrontation was undesirable because Timmons's history of violent behavior made reprisal a possibility. *See United States v. Simms*, 757 F.3d 728, 733 (8th Cir. 2014) (finding good cause where the witness "told police she was frightened of Simms after the 2012 incident, and a state court promptly entered a five-year protective order at her request"). We have, in the past, excused the Government from calling a witness who it knows will refuse to testify out of fear. *See United States v. Martin*, 382 F.3d 840, 846 (8th Cir. 2004) (witness had refused to testify against defendant in state court proceeding). Nothing in the record suggests that was the case here. Even if we credit the Government's claim that Berry may have feared Timmons, it did not stop her from making a statement to the police. *Sutton*, 916 F.3d at 1140 (requiring live testimony where witnesses "expressed fear of retribution [] during their interrogations, but this fear was apparently not so great as to prevent them from making voluntary recorded statements to the police").

We also note that the Government admitted in the district court that Berry's absence from the revocation hearing resulted from a miscommunication with the

Dubuque police department, not Berry's unavailability or fear of reprisal; the subpoena had initially been sent to an officer who was away for training and he did not receive it. Once it learned of the problem and failed to reach Berry, rather than moving forward without her testimony the Government should have sought another continuance until she could be present. *See United States v. Johnson*, 710 F.3d 784, 790 (8th Cir. 2013).

B.

The Government has also failed to show that Berry's recorded police statement was inherently reliable. The district court found Berry's statement reliable because it was preceded by a 911 call, it was made to the police, and there was no evidence she had motive to lie. We respectfully disagree.

Berry's unsworn and oral statements to the police are "the 'least reliable type of hearsay.'" *Sutton*, 916 F.3d at 1140 (quoting *United States v. Comito*, 177 F.3d 1166, 1171 (9th Cir. 1999)). Similar statements may nevertheless be reliable if corroborated by other evidence. *See, e.g.*, *Simms*, 757 F.3d at 732 (hearsay testimony of victim was consistent with incident report offered into evidence by defendant); *Martin*, 371 F.3d at 449 (hearsay statements were "spontaneous and were corroborated by the 911 audiotape, by the young child interviewed after Martin surrendered, and by what the police officers saw as well as heard at the scene"). Here, the only arguably corroborating evidence is the 911 hang up call and Berry's injuries, but neither points to Timmons as the cause of Berry's injuries.

The district court's suggestion that Berry had no reason to lie is unsupported by the record. Both her statement and other witnesses' testimony demonstrated that she had an adversarial relationship with Timmons. *See Bell*, 785 F.2d at 643–44 (finding police reports unreliable because they were the result of a "personal and adversarial" relationship). Brown testified that Berry wanted to have Timmons sent to jail. And

-6-

although the facts of Berry's prior conviction for lying to the police are distinguishable, the conviction is highly relevant to the trustworthiness of her statement because it seriously undercuts the district court's reasoning that Berry would be truthful out of fear of breaking the law. That conviction, in combination with the unsworn and oral nature of Berry's statement and the lack of other corroborating testimony, defeats any argument that Berry's statement was "demonstrably reliable." *Bell*, 782 F.2d at 643.

C.

Denying Timmons the opportunity to confront Berry was not harmless. To find harmlessness the Government must "present[] sufficient evidence, apart from the hearsay statements, to prove by a preponderance of the evidence that [the defendant] violated the conditions" of his supervision. *Black Bear*, 542 F.3d at 256. Not only was Berry's statement the only evidence connecting Timmons to her injury, the district court used that statement to discredit live witnesses. Without Berry's statement, the district court could not have found Timmons's state law violations proved by a preponderance of the evidence.

III.

We hold that Timmons had a due process right to confront Berry and we reverse. Timmons requests that we remand to the district court for a new hearing *without* providing the Government the opportunity to expand the record and bring in live testimony from Berry. Though that remedy is appropriate "where the government knew of its obligation to present evidence and failed to do so," we do not require it in this case. *See United States v. Dawn*, 685 F.3d 790, 798 (8th Cir. 2012). As we have done in the past, we remand "for further proceedings as the district court deems necessary." *Sutton*, 916 F.3d at 1141.

_____