United States Court of Appeals

For the Eighth Circuit

_____

No. 20-3397
_____

United States of America

*Plaintiff - Appellee*

v.

Jackie L. Busey

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City
_____

Submitted: May 14, 2021
Filed: August 25, 2021
_____

Before COLLOTON, WOLLMAN, and KOBES, Circuit Judges.
_____

COLLOTON, Circuit Judge.

The district court[1] revoked Jackie Busey's supervised release based on violations of conditions of release, and sentenced Busey to twenty-four months' imprisonment. Busey appeals, arguing that the court deprived him of his right to

---

[1]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

confront a deputy marshal involved in the investigation of his violations. We affirm the judgment.

The violation at issue came during Busey's second tour on supervised release. He was convicted in 2014 of attempt to pass and possession of counterfeit obligations, *see* 18 U.S.C. § 472, served an eighteen-month term of imprisonment, and commenced a thirty-six month term of supervised release. In July 2017, the court revoked Busey's supervised release after he tested positive for narcotics five times and was twice arrested for possessing controlled substances. The court sentenced him to six months' imprisonment followed by twenty-four months' supervised release. He began this second term of supervised release in December 2017, and continued on release into 2020 despite some violations of his conditions.

In August 2020, however, the court issued a warrant for Busey's arrest after the probation office reported that Busey had traveled to unauthorized locations and possessed marijuana. Officers arrested Busey at his residence, and found a pistol, 20.7 grams of marijuana, 14.4 grams of MDMA (ecstasy), and 60.4 grams of an opioid substance. The probation office filed another report alleging that Busey possessed with intent to distribute a controlled substance and possessed a firearm.

At a hearing, Busey conceded that he traveled to unauthorized locations, but contested the other alleged violations. The evidence showed that Busey resided with his wife, Ebony Hicks, in a one-bedroom apartment rented to Hicks's brother, Robert Anderson. Probation officer Werning visited the apartment approximately ten times to check on Busey over the course of a year. She met with Anderson during the first home visit, and he agreed that Busey and Hicks could reside there. On all future visits, Anderson was not present.

Werning testified that she visited Busey's apartment on August 24, 2020, saw marijuana in the apartment, and witnessed Busey attempt to hide it. She also testified

that after Busey's arrest on August 28, Deputy Marshal Thomas informed her that a firearm was found on the apartment's bedroom floor, and that drugs were thrown out of a window after officers entered the apartment.

Special Agent Miller of the Bureau of Alcohol, Tobacco, Firearms & Explosives testified that he went to Busey's apartment on August 28 after Deputy Marshal Thomas told him that Busey had been arrested and that a firearm was found in plain view. Miller testified that after he arrived at the apartment, one of his colleagues found a loaded firearm on the floor of the bedroom. Miller seized the gun from the bedroom and found sixty grams of opioid substance on top of the kitchen cabinets. According to Miller, Hicks told him that Busey was leaving the bedroom just before he was arrested, and that the gun and drugs did not belong to her.

Busey objected to Miller's testimony recounting Thomas's statements on the ground that he had a right to confront Thomas. The government argued that calling Thomas was impractical because the arrest involved agents from "around the nation," and that Miller's testimony was reliable. The court overruled the objection, reasoning that Miller's testimony as an investigating officer was permissible. But on cross-examination, Miller testified that Thomas was a deputy marshal in Kansas City, the venue where the hearing was held. Busey renewed his objection to Miller's testimony about Thomas's statements, but the court overruled it again.

The court ultimately found that the government established a Grade A violation for possession with intent to distribute a controlled substance based on "distribution level quantities" of opioid substance in the kitchen, a Grade B violation for possession of the gun, and Grade C violations for possession of a controlled substance and failure to comply with location monitoring. *See* USSG § 7B1.1(a). The court calculated an advisory guideline range of 30 to 37 months, which exceeded the statutory maximum penalty of twenty-four months' imprisonment, *see* 18 U.S.C.

§ 3583(e)(3), so the statutory maximum became the guideline sentence. USSG § 7B1.4(b)(1). The court then sentenced Busey to twenty-four months' imprisonment.[2]

On appeal, Busey argues that the district court violated his right to confront Deputy Thomas under the Confrontation Clause, the Due Process Clause, and Federal Rule of Criminal Procedure 32.1. There was no Sixth Amendment violation; a revocation proceeding is "not part of a criminal prosecution," so the Confrontation Clause does not apply. *United States v. Ray*, 530 F.3d 666, 668 (8th Cir. 2008).

In *United States v. Bell*, 785 F.2d 640 (8th Cir. 1986), however, this court recognized a due process right to confront witnesses in revocation proceedings unless the government shows good cause for not calling a witness. *Id.* at 642. A district court must balance the interest in confrontation "against the grounds asserted by the government for not requiring confrontation." *Id.* There are no "fixed rules," but courts "assess the explanation the government offers of why confrontation is undesirable or impractical" and "the reliability of the evidence which the government offers in place of live testimony." *Id.* at 642-43. Rule 32.1(b)(2)(C) similarly provides for confrontation unless "the interest of justice does not require the witness to appear."

Busey contends that the district court erred in allowing Miller's testimony because there was no adequate explanation for the government's failing to call Thomas as a witness. The district court ruled that the disputed testimony was admissible under the balancing test of *Bell*. And *Bell* did not address whether confrontation is required where the testimony offered is demonstrably reliable, but

---

[2]Although the district court clearly found a Grade A violation at the hearing, the written judgment does not list that violation. The district court may correct a clerical error in the judgment at any time. *See* Fed. R. Crim. P. 36.

it would be only a modest burden to produce the declarant. *Id*. at 643. The decision in *United States v. Zentgraf*, 20 F.3d 906 (8th Cir. 1994), however, arguably transmogrified the impracticality of confrontation from a *sufficient* condition for making a "*strong* showing of good cause," *Bell*, 785 F.2d at 643 (emphasis added), into a *necessary* condition for *any* showing of good cause. *Zentgraf*, 20 F.3d at 910; *see United States v. Sutton*, 916 F.3d 1134, 1139 (8th Cir. 2019). Even so, if we assume for the sake of analysis that there was a violation of Busey's due process rights in admitting Miller's disputed testimony, we conclude that any error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24 (1967).

Busey identifies two statements that he claims were improperly admitted. First, he points to Miller's testimony that Thomas informed him that Hicks and Busey were "coming from the bedroom upon the marshal's breaching the front door." Second, he cites Miller's testimony that Thomas found a firearm in "plain view" in the bedroom. He asserts that this testimony was prejudicial because the statements placed him "near the window where drugs were discarded" and near a firearm in "plain view."

Other admissible evidence, however, established that Busey possessed with intent to distribute the controlled substance found on top of the kitchen cabinets in the apartment. Possession of a controlled substance requires a district court to revoke supervised release, 18 U.S.C. § 3583(g)(1), and possession with intent to distribute is a Grade A violation that determined Busey's advisory sentencing guideline range. USSG § 7B1.1(a)(1), (b); *see id.* § 4B1.2(b). Because the statements that Busey identifies do not concern the Grade A violation based on Busey's possession with intent to distribute the sixty grams of opioid substance found in the kitchen, any error did not affect the outcome of the proceeding. *See United States v. Malone*, 846 F. App'x 355, 362 (6th Cir. 2021).

In his reply brief, Busey argues that Thomas's statements were necessary to the finding that he possessed the drugs in the kitchen because the drugs thrown from the window of the apartment and his alleged possession of the gun were "circumstantial evidence" that he possessed the drugs in the kitchen. He asserts that these facts were critical because his brother-in-law rented the apartment, and Hicks also lived at the apartment, so there were other parties who might have possessed the drugs in the kitchen. The district court, however, did not connect the drugs thrown from the window or the finding on the gun in the bedroom to the finding on the drugs in the kitchen, and there is nothing to suggest that the Grade A violation hinged on these facts.

Any error was also harmless because substantial unchallenged evidence supported the Grade B violation for possession of the firearm, and Thomas's reported statements were largely cumulative and unnecessary to the finding. *See United States v. Montgomery*, 896 F.3d 875, 879 (8th Cir. 2018). Miller testified that Hicks told him that she and Busey were "coming from the bedroom to the front door when the marshals breached," and that the gun was not hers. Busey does not argue on appeal that this testimony was improper; Hicks was present in the courtroom and could have been called by the defense for cross-examination. Miller explained that another agent searched the bedroom with him and found the gun on the floor.

Busey points out that Anderson rented the apartment, and that probation officer Werning saw Hicks's cousin in the apartment on August 24. But neither person was present when the gun was found on August 28, and Werning testified that she had not seen Anderson in nearly a year. Miller testified that Busey's wallet was found in the bedroom, and that no bedding, toiletries, or luggage indicated that anyone was sleeping in the living room. Even without the objected-to testimony from Miller relating statements from Thomas, there is no reasonable doubt that the court would have reached the same finding about Busey's possession of the firearm.

To the extent the court considered Thomas's hearsay statements in deciding an appropriate sentence, there was no error. The confrontation right recognized in *Bell* is limited to the question whether release should be revoked. This question was answered by Busey's possession of a controlled substance. 18 U.S.C. § 3583(g)(1). Due process generally does not require confrontation during sentencing following a conviction, *see United States v. Wise*, 976 F.2d 393, 397-98 (8th Cir. 1992) (en banc), and due process does not require any greater protection in the sentencing phase of a revocation proceeding. *See United States v. Williams*, 847 F.3d 251, 254 (5th Cir. 2017); *United States v. Ruby*, 706 F.3d 1221, 1226-28 (10th Cir. 2013).

The judgment of the district court is affirmed.

_____