# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2646
_____

United States of America

*Plaintiff - Appellee*

v.

Donarius Kincaid

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Western
_____

Submitted: September 20, 2021
Filed: November 15, 2021
[Unpublished]
_____

Before SHEPHERD, WOLLMAN, and KOBES, Circuit Judges.
_____

PER CURIAM.

The district court[1] revoked Donarius Kincaid's supervised release after concluding that he had committed a domestic assault causing strangulation in

_____

[1] The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

violation of Iowa law. Kincaid was sentenced to 24 months' imprisonment and one year of supervised release. He appeals, arguing that the district court violated his due process rights by improperly relying on recorded statements of the victim's minor son, who—despite being subpoenaed by the government—did not appear at the revocation hearing for cross-examination. We affirm.

On July 3, 2020, police responded to a domestic violence call at the Waterloo, Iowa, apartment where Kincaid resided with his girlfriend, K.M., and her minor children. The incident led to Kincaid's arrest for domestic assault causing strangulation. Kincaid's federal probation officer thereafter filed an amended petition to revoke his supervised release, alleging, as relevant here, a new law violation for the domestic assault offense.

The police's response to the incident was captured on responding officer Alexander Bovy's body camera and was admitted into evidence at the revocation hearing. The footage shows several officers arriving at the apartment as shouting emanated from the interior. It also shows Kincaid and C.S., K.M.'s minor son, engaged in an apparent physical altercation, with officers separating the two. Shortly thereafter, Officer Bovy began interviewing C.S. in the apartment's hallway, while Kincaid and K.M. were separated and placed in other rooms. C.S. told Officer Bovy that Kincaid was upset at K.M. because she had been absent from the house for longer than he had expected. He stated that Kincaid and K.M. began fighting, and that Kincaid began "choking her on the couch" in the living room. C.S. reported that he witnessed Kincaid choking K.M. against a wall with his hands around her neck and biting K.M.'s finger when she attempted to break free.

The body camera footage then shows Officer Bovy's conversation with K.M. K.M. stated that Kincaid was "very aggressive" the night of the altercation and that he had choked her while the two were fighting. She showed Officer Bovy a small scratch on her jaw line that she alleged was inflicted by Kincaid. K.M. told Officer

-2-

Bovy that Kincaid had choked her to the point that she could not breath while the two were on the couch. She displayed her neck as if to show marks from the strangulation, but the police incident report does not mention any physical evidence of strangulation other than the scratch mark.

The government called K.M. to testify at the hearing, during which she contradicted the statements she had made to Officer Bovy at the scene. She initially testified that she could not recall if Kincaid had strangled her, because her memory of the incident was clouded by her anger with Kincaid and the chaos surrounding their altercation. During cross-examination, however, she unequivocally stated that Kincaid had not put his hands around her neck at any point during the fight.

The government had subpoenaed C.S. to testify, but he failed to appear at the hearing. K.M. testified that C.S. did not want to participate in the hearing because his ADHD makes him feel uncomfortable in "huge atmospheres." Sentencing Tr. 33. When asked by the government why C.S. did not appear, despite the subpoena, K.M. responded:

> [H]e is 14 years old. He is still a minor. So if my son tells me, with his condition, that he does not feel comfortable, then I will not go ahead and put him into something he does not feel comfortable being a part of, so I will take full responsibility for him.

Id. at 34.

The district court determined that K.M.'s statements to Officer Bovy at the scene were credible and that she was "not telling the truth" in her hearing testimony. Id. at 52. Over Kincaid's objection, the district court also considered C.S.'s recorded statements, finding that they corroborated K.M.'s statements to Officer Bovy. The court discredited K.M.'s explanation that C.S. did not appear because of his ADHD, finding instead that C.S. "did not appear because [K.M.] told him not to appear, and

-3-

[K.M.] is trying to protect the defendant." Id. at 54. Ultimately, the district court concluded that Kincaid's "due process rights have been observed" and that he had committed domestic assault causing strangulation. Id.

Kincaid argues that the presentation of C.S.'s recorded statements at the revocation hearing violated his constitutional right to due process. "A revocation hearing is not a criminal trial, and a defendant on supervised release is not entitled to the full panoply of protections afforded by the rules of evidence." United States v. Timmons, 950 F.3d 1047, 1049–50 (8th Cir. 2020) (quoting United States v. Sutton, 916 F.3d 1134, 1138 (8th Cir. 2019)). Defendants are, however, entitled to receive "certain 'minimum requirements of due process'" in revocation proceedings. Id. at 1050 (quoting Morrissey v. Brewer, 408 U.S. 471, 488–89 (1972)). One such requirement "is the right to 'confront and cross examine adverse witnesses,'" unless the district court "specifically finds good cause for not allowing confrontation[.]" Id. (quoting Morrissey, 408 U.S. at 489). To determine whether good cause exists, "[a] district court must balance the interest in confrontation 'against the grounds asserted by the government for not requiring confrontation.'" United States v. Busey, 11 F.4th 664, 666 (8th Cir. 2021) (quoting United States v. Bell, 785 F.2d 640, 642 (8th Cir. 1986)).

As grounds for not requiring confrontation, the government asserted only that K.M. did not bring C.S. to court to testify. We have not previously considered whether a mother's decision to forego bringing her minor child to court pursuant to a subpoena constitutes "good cause for not allowing confrontation" at a revocation hearing. See Timmons, 950 F.3d at 1050 (quoting Morrissey, 408 U.S. at 489). We need not decide the issue here, either, because any error in considering C.S.'s recorded statements was harmless. See United States v. Martin, 382 F.3d 840, 846 (8th Cir. 2004) ("In effect, the district court's failure to engage in the Bell balancing analysis on the record was harmless error in the present case.").

-4-

The government presented compelling evidence, "apart from the hearsay statements, to prove by a preponderance of the evidence" that Kincaid had committed the assault. See Timmons, 950 F.3d at 1051–52 (quoting United States v. Black Bear, 542 F.3d 249, 256 (8th Cir. 2008)). Specifically, the government presented the body camera footage of K.M. telling Officer Bovy that Kincaid had strangled her. The district court found that K.M.'s statements to Officer Bovy carried "inherent reliability" because she was in an excited state and likely did not "have the wherewithal to be thinking about what [she was] going to say and what the ramifications are[.]" Sentencing Tr. 53. According to the district court, in the video, "[K.M.] says what's on her mind, what is true, and that is, the defendant assaulted her and choked her." Id. The district court was of the opinion that K.M.'s hearing testimony was motivated by her desire to "protect her boyfriend" by "l[ying] under oath." Id. at 52. It found credible K.M.'s recorded statements that Kincaid had strangled her. Kincaid has offered us no reason to question that credibility determination, which is "virtually unreviewable on appeal." United States v. Holly, 983 F.3d 361, 363–64 (8th Cir. 2020) (quoting United States v. Heath, 58 F.3d 1271, 1275 (8th Cir. 1995)).

The judgment is affirmed.

_____