# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-2331

_____

United States of America

*Plaintiff - Appellee*

v.

Calvin Starr, also known as Calvin Herman Starr

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 12, 2022
Filed: January 19, 2023

_____

Before SMITH, Chief Judge, ARNOLD and STRAS, Circuit Judges.

_____

ARNOLD, Circuit Judge.

While on supervised release after pleading guilty to being a felon in possession of a firearm, *see* 18 U.S.C. §§ 922(g)(1), 924(a)(2), Calvin Starr reportedly assaulted his girlfriend and therefore violated conditions of his release. At the ensuing revocation hearing, the government did not call Starr's girlfriend to testify but instead related her statements through a different witness. Starr maintains that the

government's introduction of this hearsay denied him his due-process right to confront adverse witnesses. Because any error the district court[1] may have committed in allowing the government to introduce this hearsay was harmless, we affirm.

Starr's probation officer informed the court that she believed the assault violated three conditions of his supervised release, the most serious of which was that he not commit another crime, and she recommended that the court revoke Starr's supervision. At the revocation hearing, the government called St. Louis County police officer Matthew Wilkinson to the stand. He testified that while on patrol one day he received a radio call asking him to respond to a domestic assault, so he met a woman, A.D., at a church a few blocks from her home. When the government asked Wilkinson what A.D. had told him, defense counsel objected and invoked Starr's due-process right to confront witnesses against him. The court overruled the objection with no explanation other than to say, "[i]t is a revocation hearing." Wilkinson then related what A.D. had told him.

After hearing from additional witnesses and hearing argument from the parties, including additional argument about how introduction of A.D.'s hearsay statements violated due process, the court again overruled Starr's objections and concluded that it was "reasonably certain, by a preponderance of evidence, that the violations have been committed by Mr. Starr." The court determined that, since the assault violated Mo. Rev. Stat. § 565.073.1(1) and was a crime of violence, *see United States v. Montgomery*, 701 F.3d 1218, 1222 (8th Cir. 2012), Starr had committed a Grade A violation of his release conditions, *see* USSG § 7B1.1(a)(1), resulting in a Guidelines range of 18–24 months' imprisonment. The court revoked Starr's supervised release and sentenced him to 24 months.

---

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

We review de novo Starr's contention that the district court denied him the right to confront adverse witnesses. *See United States v. Coleman*, 7 F.4th 740, 744 (8th Cir. 2021). Though defendants do not receive the "full panoply" of rights at revocation proceedings that they receive at trial, they do have the due-process right to confront adverse witnesses unless there's "good cause" for not allowing confrontation. *See id.* at 744–45; *see also* Fed. R. Crim. P. 32.1(b)(2)(C). The parties dispute whether the government demonstrated good cause for not allowing Starr to confront A.D., but we need not settle this dispute because any violation of Starr's rights was harmless. When considering whether an error was harmless in this context, we have consistently said that the government must offer "sufficient evidence, apart from the hearsay statements, to prove by a preponderance of the evidence that [Starr] violated the conditions of his supervision." *See, e.g.*, *United States v. Timmons*, 950 F.3d 1047, 1051–52 (8th Cir. 2020). We hold that the government has done so here.

In addition to relating A.D.'s statements, Wilkinson testified that, upon meeting A.D., he saw a knot forming over her eyebrow and that she had scrapes and lacerations on her shoulder and shoulder blade and a little mark on her neck. According to Wilkinson, paramedics evaluated A.D. and determined that she might have sustained a broken arm or shoulder, and so they transported her to a hospital.

The government also called a detective with the St. Louis County Police Department to the stand. He testified that he recorded an interview that he conducted with Starr about a week after the alleged incident. During that interview, which was admitted into evidence and played in large part for the court, Starr admitted that on the day in question he and A.D. "got into an argument" but denied that "licks" were ever thrown. He did confirm that things "got physical," though, and that they "kind of tussled, like a little wrestling, a little hair pulling, a little pushing." He also admitted that they fell down during this argument after he "bear hugged her" and picked her up. He said that it was possible that A.D. may have hit her head or face when they fell and that "maybe it's a possibility" she had gotten hurt "if it was a hard

enough fall," but he pointed out that A.D. had already stated that she needed medical attention for her hands and feet before their altercation. During this interview he also admitted that he sent A.D. text messages while she was en route to the hospital. One message read, "U Got the police called on me u dead bitch[.] Exactly y I told u about that outside shit if I go to jail I better move on my son[.]" The other said, "if them muthafuckers get my name u dead on god." Finally, Starr's probation officer testified that twelve days after the incident she saw a bandage on Starr's hand. When she asked him about it, he said "he was just play fighting with a partner," and when she asked what he meant by "partner," he said "Well, a friend that I just wrestle with." We think there is enough in the record to show by a preponderance of the evidence that Starr committed the alleged violation.

Starr maintains that this evidence shows at most that he recklessly assaulted A.D., *see* Mo. Rev. Stat. § 565.073.1(2)–(3), not that he knowingly did so. The distinction matters, he says, because a crime that can be committed recklessly does not constitute a crime of violence, *see United States v. Kent*, 44 F.4th 773, 777 (8th Cir. 2022), and so he committed at most a grade B violation, not a grade A violation. So he says his Guidelines range should have been lower than the one the district court calculated. But we disagree with Starr that the record, stripped of A.D.'s hearsay statements, leads merely to the conclusion that he harmed A.D. recklessly. We look to Starr's "actual conduct in determining the grade of his supervised release violation." *See United States v. Schwab*, 85 F.3d 326, 327 (8th Cir. 1996) (per curiam). His admitted participation in a physical altercation with A.D., coupled with the apparent injuries that resulted and the threatening messages sent in the immediate aftermath, supports a reasonable inference that he intentionally or knowingly committed the assault. So the government has offered sufficient evidence apart from A.D.'s statements to prove by a preponderance of the evidence that Starr committed a grade A violation of the conditions of his supervision. *See Timmons*, 950 F.3d at 1051–52.

Affirmed.

_____