**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2284
_____

UNITED STATES OF AMERICA,

v.

WILLIAM BARKSDALE,
                                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1:11-cr-00841-001)
District Judge: Honorable Robert B. Kugler
_____

Argued: January 18, 2024

Before: JORDAN, BIBAS, and AMBRO, *Circuit Judges*

(Filed: April 4, 2024)
_____

Kimberly R. Brunson    **[ARGUED]**
FEDERAL PUBLIC DEFENDER'S OFFICE
1001 Liberty Avenue
Pittsburgh, PA 15222
    *Counsel for Appellant*

Mark E. Coyne
John F. Romano          **[ARGUED]**
U.S. ATTORNEY'S OFFICE
970 Broad Street, Room 700
Newark, NJ 07102
   *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

BIBAS, *Circuit Judge*.

Criminal defendants have a right to testify in their own defense. At a hearing to revoke his supervised release, William Barksdale repeatedly tried to exercise that right. But he never got to do so. And because the government did not prove this constitutional error harmless beyond a reasonable doubt, we will remand to let the judge fix it.

## I.  A REVOCATION HEARING GONE WRONG

A dozen years ago, William Barksdale pleaded guilty to conspiring to commit wire fraud. The judge sentenced him to twenty months in prison plus five years' supervised release. Near the end of his supervised release, his probation officer alerted the District Court to ten potential violations of his release terms.

The revocation hearing spanned three days. The government put on extensive evidence of Barksdale's violations, and Barksdale's lawyer cross-examined the government's witness.

The court let his lawyer use unauthenticated documents but would not admit them into evidence.

At the end of the first day, Barksdale's lawyer flagged that he might testify in his own defense. But after the government rested, his lawyer said that he would not. The judge then asked Barksdale directly if that was right. He responded: "No, sir. I prefer to testify." App. 273.

After Barksdale explained at length how "[he] would like … to refute" the government's witness, the judge explained that testifying would trigger cross-examination. App. 274–75. Barksdale said he understood. Yet the judge said: "You made your choice. You don't want to testify. That's fine. I respect that." App. 275. The judge then gave Barksdale five minutes to try to strike a last-minute deal with the government.

After failing to do so, Barksdale again asked to testify. And again, the judge refused. Barksdale objected immediately. He argued that he had said only that he would waive that right if he could make a deal. But the judge insisted that Barksdale had said "[he] didn't want to testify." App. 280. After a brief exchange, the judge told Barksdale that he would not "reopen" evidence to let him testify. App. 285. He then found Barksdale guilty of nine release violations (later dismissing the tenth).

At sentencing the next day, the government sought the statutory maximum: three years. Barksdale's lawyer asked for a sentence within the Guidelines range: six months. Barksdale himself then spoke at length, insisting again that he wanted to testify. The judge responded that it was "convenient" for Barksdale to say he would testify now after saying he would not do so earlier. App. 351. He protested again that he had

wanted to testify all along, even though his lawyer had advised him against it. Yet the judge repeated that he had declined to testify.

The judge then walked through the sentencing factors, stressing Barksdale's criminal history and the number of violations. He saw no reason to believe that Barksdale had changed or would change. But he did not mention the various mitigating factors that Barksdale and his lawyer had raised. And only once did he directly consider Barksdale's own words, refusing to credit his denial about writing an email. Ultimately, the judge sentenced Barksdale to thirty months in prison, longer than his initial twenty-month sentence and close to the thirty-six-month maximum that the Government sought.

Barksdale appeals, arguing that the District Court denied him his right to testify in his own defense. He preserved that issue by objecting promptly. *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766–67 (2020). We review the court's findings of fact (including waiver) for clear error, its legal rulings de novo, and its ultimate decision to revoke supervised release for abuse of discretion. *United States v. Maloney*, 513 F.3d 350, 354 (3d Cir. 2008); *United States v. Scarfo*, 41 F.4th 136, 220 n.101 (3d Cir. 2022).

## II. THE JUDGE DID NOT LET BARKSDALE TESTIFY

### A. On the record before us, the judge erred

Criminal defendants have the right to tell their side of the story on the witness stand. *Rock v. Arkansas*, 483 U.S. 44, 49–53 (1987). And although revocation hearings are not part of a criminal proceeding, they can cost a defendant his liberty.

4

*Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973). To safeguard that liberty, due process guarantees him the right to a hearing, to confront his accusers (as limited to protect witnesses' safety), and to put on evidence in his own defense. *Id.*; *Morrissey v. Brewer*, 408 U.S. 471, 480, 489 (1972); Fed. R. Crim. P. 32.1(b)(2)(C). A key part of putting on evidence is the right to "appear and speak in [one's] own behalf." *Morrissey*, 408 U.S. at 487.

The judge denied Barksdale his right to testify on his own behalf. Nowhere did Barksdale himself waive that right. Yet the judge repeatedly said he had. To be sure, a few times the judge and Barksdale may refer to past conversations that are not on the record. And perhaps an off-the-record conversation influenced the judge's on-the-record comments. But we cannot rely on speculation. We can rule only on the record before us. On that record, Barksdale was denied his right to testify.

### B. Under *Chapman*, we ask if the error was harmless beyond a reasonable doubt

Since denying this constitutional right does not "affect[] the framework" of the hearing, it is not a structural error. *See Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017). But the defendant preserved this constitutional error by objecting promptly. So, on direct appeal, the government must prove that this error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967); *Neder v. United States*, 527 U.S. 1, 8 (1999) (describing the strong presumption that most constitutional errors are subject to harmless-error review).

The government argues for a lower burden here. Unlike at a criminal trial, the government must prove supervised-release

5

violations by only a preponderance of evidence, not beyond a reasonable doubt. 18 U.S.C. § 3583(e)(3). The government argues that it likewise bears a lower burden on appeal. So, it reasons, it need show only that any error did not substantially affect the outcome. Appellee's Br. 21–22 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)).

But the government goes astray. Our harmless-error test does not depend on the government's burden at trial. Rather, it depends on the source of the right and the procedural posture. For a non-constitutional error, we need not reverse unless it had a "substantial and injurious effect" on the outcome. *Kotteakos v. United States*, 328 U.S. 750, 776 (1946). We also apply that less demanding standard to constitutional errors on habeas review to respect finality and federalism. *Brecht*, 507 U.S. at 623, 635.

The government cites cases that apply a lower standard to revocation hearings. *Smith v. U.S. Parole Comm'n*, 875 F.2d 1361, 1368 (9th Cir. 1988) (denial of appointed counsel, violating a regulation); *Sutherland v. McCall*, 709 F.2d 730, 732–33 (D.C. Cir. 1983) (delay in scheduling hearing); *Standlee v. Rhay*, 557 F.2d 1303, 1305, 1307–08 (9th Cir. 1977) (habeas). But all these cases involve federal habeas review and most deal with non-constitutional errors.

Here, by contrast, we are reviewing a constitutional error on direct appeal. In that posture, we ask if the error was harmless beyond a reasonable doubt. *United States v. Cross*, 308 F.3d 308, 326 (3d Cir. 2002). We thus join the Eighth and Ninth Circuits in applying *Chapman*'s harmless-error standard to direct appeals of constitutional issues from revocation

hearings. *United States v. Busey*, 11 F.4th 664, 667 (8th Cir. 2021); *United States v. Comito*, 177 F.3d 1166, 1170 (9th Cir. 1999).

### C. The government did not prove the error harmless

The government offers three ways to find the error harmless. First, the judge commented several times that there was "no question" that Barksdale committed several violations. App. 308–10. But Barksdale would have been the only witness to challenge the government's version of events; perhaps he could have raised a question. Even if not, the government's theory shows at most that Barksdale would have been found guilty, not that he would also have gotten the same sentence.

Second, the government points to Barksdale's extensive cross-examination of the government's witness. Yet that is a separate right. It let Barksdale try to poke holes in the government's story but was no substitute for giving his own account.

Finally, the government stresses that Barksdale still got to make a lengthy allocution after the judge found supervised-release violations. But allocutions are not testimony. Testimony is affirmative evidence, not just damage control. And testimony happens early enough to shape the narrative.

True, the judge viewed Barksdale negatively, denouncing him as "a con man," "a scammer," and "a danger to the community" who is unlikely to change. App. 353. But a judge's mistrust of a defendant is not enough to show harmlessness. We cannot be certain that Barksdale's testimony would have made no difference. Even if his testimony could have reduced his sentence only slightly, that is enough to make the error harmful. *See Glover v. United States*, 531 U.S. 198, 203 (2001).

7

### III. THE SAME JUDGE CAN HEAR THE REMAND WITHOUT APPEARANCE OF BIAS

Barksdale also asks us to remand the case to a new judge. Yet we reassign a case to a different judge only when there is some concern about bias or appearance of bias or when a defendant reasonably fears retribution. *See United States v. Cruz*, 95 F.4th 106, 113 (3d Cir. 2024); *Gov't of the V.I. v. Walker*, 261 F.3d 370, 376 (3d Cir. 2001). None of these concerns is present here.

True, on this record, the judge seemed frustrated with Barksdale. But any such frustration is understandable after a long and trying hearing. Barksdale was chatty, interrupted often, and played fast and loose with the evidence. His behavior could well have tried anyone's patience. Yet the judge limited his critical comments about Barksdale to the specific statements that rang false. We see nothing to suggest that the judge resents or is biased against Barksdale.

\* \* \* \* \*

On the record before us, the District Court should have heeded Barksdale's pleas to testify. And the government did not prove that this mistake was harmless beyond a reasonable doubt. But neither was it grave enough to require a new judge on remand. So we will remand to the same judge for a new revocation hearing to fix this mistake.