**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-3210
_____

UNITED STATES OF AMERICA

v.

STEVEN PENNYCOOKE,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2:20-cr-00227-001)
District Judge:  Honorable John M. Gallagher
_____

Argued September 10, 2025
_____

Before:  CHAGARES, <u>Chief Judge</u>, PORTER and ROTH, <u>Circuit Judges</u>

(Filed: December 19, 2025)

Keith M. Donoghue          [ARGUED]
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106

        *Counsel for Appellant*

Kwambina Coker
Robert A. Zauzmer          [ARGUED]

Office of the United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

*Counsel for Appellee*

————————

OPINION[*]

————————

CHAGARES, Chief Judge.

Steven Pennycooke appeals the District Court's order revoking his supervised release and imposing a fifteen-month term of imprisonment. The revocation relied primarily on a written statement by Pennycooke's ex-girlfriend, which was admitted over his objection. For the reasons that follow, we will vacate the District Court's judgment revoking supervised release and remand the matter for further proceedings.

I.[1]

Steven Pennycooke was placed on supervised release in July 2024, after he completed a 51-month term of imprisonment for being a felon in possession of a firearm. On October 23, 2024, Pennycooke's ex-girlfriend, Sarah Jones, telephoned his probation officer, Katie Quinlan, stating that Pennycooke had assaulted her on several occasions in the past. Jones appeared at the probation office that day and provided a three-page handwritten statement describing the abuse to a different probation officer, Karen Myslinski. She also text messaged Quinlan three undated photographs of injuries to her

---

[*] This disposition is not an opinion of the full Court and, pursuant to 3d Cir. I.O.P. 5.7, does not constitute binding precedent.
[1] Because we write for the parties, we recite only facts pertinent to our decision.

2

face.

The probation office charged Pennycooke with an "A" supervised release violation — the most serious level — based on Jones's abuse allegations. It also charged several minor "C" violations, such as testing positive for drug use, missing drug testing, and missing outpatient treatment. A warrant was issued and Pennycooke was arrested.

The District Court held a revocation hearing on November 21, 2024. The Government called Quinlan as its only witness, as Jones failed to appear at the hearing. Quinlan testified to the contents of Jones's written statement and to receiving the photos of Jones's injuries. Quinlan also stated that she last spoke to Jones the Friday before the hearing, when Quinlan informed Jones of the hearing location and asked Jones to reach out to the Assistant United States Attorney about testifying. Jones apparently never followed up.

Pennycooke repeatedly objected on hearsay grounds to Quinlan's testimony about Jones's allegations. He also testified in his own defense, denying the assault allegations and admitting the "C" violations for drug infractions. He testified that his relationship with Jones had been "toxic" and "chao[tic]" and that Jones was extremely jealous. As to the injuries depicted in Jones's photos, he testified that Jones had injured her face in a car accident in late September.

The District Court admitted Jones's written statement over Pennycooke's objection. It concluded that there were sufficient indicia of reliability because: (1) Quinlan had seen Jones before and therefore knew she was Pennycooke's girlfriend; (2) Jones's statement was handwritten, signed, and accompanied by a copy of her

3

identification; and (3) Jones provided photographs consistent with the statement. The District Court also found corroboration in that Pennycooke had admitted to drug use and Jones had made her statement to a probation officer.

The District Court noted that the photographs of Jones's injuries were "consistent with — perhaps with other things" as well as abuse, Appendix ("App.") 63, but reasoned that Pennycooke's alternative explanation that a car accident caused her injuries did not "carry the day." App. 95. The District Court found in its written memorandum that Pennycooke "offered no corroboration for his claims of motive for fabrication or proposed alternate sources of injuries" and, although acknowledging that the burden rests on the Government to establish the admissibility of the hearsay, cited prior instances in which it had found that Pennycooke was not credible. App. 5.

As for Jones's absence, the District Court could not "say with certainty why she's not here," but speculated that she may not have attended to hearing because it was a school day and she has a young child, although the court did not find that childcare was the cause. App. 92. In its subsequent written memorandum, the District Court found that Jones's "fear of Defendant was evident in the words written in her statement," although it did not expressly find that fear kept her from testifying at the hearing. App. 5.

The District Court ultimately described the case as a "close call" but concluded that Pennycooke had committed the "A" violation. App. 92. It revoked Pennycooke's supervised release and imposed an additional 15 months of imprisonment, which was a downward variance from the lower end of the 18- to 24-month Guidelines range. Pennycooke timely appealed.

4

II.[2]

A supervised releasee generally has a due process right to confront an adverse witness in a revocation hearing.  Morrissey v. Brewer, 408 U.S. 471, 488–89 (1972); United States v. Rose, 152 F.4th 153, 158 (3d Cir. 2025).  To that end, Federal Rule of Criminal Procedure 32.1 provides that the releasee is entitled to an opportunity to question any adverse witness "unless the court determines that the interest of justice does not require the witness to appear."  Fed. R. Crim. P. 32.1(b)(2)(C).  Courts therefore should balance the asserted right to cross-examine a witness against the Government's good cause for the witness's absence before admitting hearsay evidence.  United States v. Lloyd, 566 F.3d 341, 344–45 (3d Cir. 2024).

A principal consideration in assessing the releasee's confrontation interest is the reliability of the proffered hearsay.  Id. at 345.  "In some cases, the releasee's interest in confrontation may be overwhelmed by the hearsay's reliability," making a good cause showing unnecessary.  Id.  But more typically, even if the hearsay bears some indicia of reliability, a district court must consider whether the Government has made a showing of good cause sufficient to outweigh the releasee's constitutional confrontation interest.  Rose, 152 F.4th at 158.

---

[2] The District Court had jurisdiction under 18 U.S.C. §§ 3231, 3583(e), and we have jurisdiction under 28 U.S.C. § 1291.  We review a district court's admission of hearsay evidence under Rule 32.1 for abuse of discretion.  United States v. Lloyd, 566 F.3d 341, 344 (3d Cir. 2009).  Hearsay is presumed inadmissible, so it is the Government's burden to demonstrate admissibility.  See United States v. Wheeler, 130 F.4th 406, 417 (4th Cir. 2025).  Even if there was an error in admitting hearsay evidence, we will not reverse if the error was harmless beyond a reasonable doubt.  United States v. Barksdale, 98 F.4th 86, 89 (3d Cir. 2024).

Here, while the District Court did find that the hearsay statement had "sufficient indicia of reliability," App. 61, it did not conclude that the hearsay was so reliable as to excuse the Government from making a showing of good cause.[3] The District Court therefore was required to assess the Government's showing of good cause and balance it against Pennycooke's right to confront Jones. Rose, 152 F.4th at 158. This is where the District Court's analysis fell short.

There is virtually no evidence of record to support a finding that the Government established good cause for Jones's absence. A witness's refusal to testify or threats against the witness may provide good cause. Lloyd, 566 F.3d at 346. An inability to locate a witness also may provide good cause. Rose, 152 F.4th at 161. Here, however, Jones's home address and contact information were known to the Government, and there was no evidence that she had been threatened or was refusing to testify. The District

---

[3] The District Court recognized that Jones's statement bore indicia of reliability. For instance, it was detailed and made in writing. Cf. Lloyd, 566 F.3d at 345 (observing that a lack of detail undermines reliability); United States v. Timmons, 950 F.3d 1047, 1051 (8th Cir. 2020) (observing that oral, unsworn statements are the least reliable form of hearsay). Additionally, Jones submitted photographs to corroborate her statement. Yet indicia of unreliability also were present. Jones was an ex-girlfriend with possible animus against Pennycooke, which weighs against her statement's reliability. Lloyd, 566 F.3d at 346. Her statement was not sworn under oath and concerned allegations about which only she and Pennycooke had knowledge. See United States v. Comito, 177 F.3d 1166, 1171 (9th Cir. 1999) (observing that verbal statements not made under oath that related to information about which only the accuser and Defendant had knowledge were among the least reliable forms of hearsay). And the District Court recognized that the undated photographs of Jones's injuries provided less than adequate corroboration because they were "consistent with – perhaps with other things" as well as abuse. App. 63; see United States v. Coleman, 7 F.4th 740, 747 (8th Cir. 2021) (observing that, even if photographs matched hearsay statements, they did not provide enough evidence to answer the "who," "when," and "how" behind the injuries).

6

Court based an inference of fear on the tone of Jones's written statement. The reasonableness of this inference as a basis for a good cause finding is questionable because, six days before the hearing, Jones indicated a willingness to testify. See Timmons, 950 F.3d at 1051 (observing that the witness in question made a statement to the Government, undermining the Government's unsubstantiated claim that the witness was afraid to appear). Additionally, Quinlan, the only witness present at court to have spoken to Jones, did not testify that Jones expressed a fear of appearing in court against Pennycooke. See Comito, 177 F.3d at 1172 (declining to credit argument about a witness's fear of testifying because the officer that had spoken to the witness did not present evidence on that point).

The Government argues that rainy weather, the need for childcare, and the distance between Jones's residence and the courthouse potentially contributed to Jones's failure to appear. Perhaps they did, but the District Court made no findings on these matters, which appear to rely on speculation.[4] Moreover, even if the District Court had made such findings, cost and inconvenience, without more, generally do not yield good cause outweighing the confrontation right. Lloyd, 566 F.3d at 346.

Procuring live witness testimony generally does not impose an undue burden on the Government if a witness resides in the same state as the hearing, and even an unsuccessful attempt to serve a subpoena generally may not suffice to establish good

---

[4] If the District Court had made findings of fact on these topics, we would review them for clear error. See Rose, 152 F.4th at 158. To survive that standard, there must be sufficient evidence in the record to support the factual finding. See Newark Branch, NAACP v. City of Bayonne, 134 F.3d 113, 120 (3d Cir. 1998).

cause.  See United States v. Wheeler, 130 F.4th 406, 418 (4th Cir. 2025) (quoting United States v. Sutton, 916 F.3d 1134, 1139 (8th Cir. 2019)); Timmons, 950 F.3d at 1050. Here, the Government never sought a subpoena, and Officer Quinlan's single phone call to Jones six days before the hearing suggests little diligence on the Government's part. Compare Wheeler, 140 F.4th at 418 (holding that calls and text messages and a single attempt to serve a subpoena were inadequate), with Rose, 152 F.4th at 161 (observing in that case that the Government made "diligent, though unsuccessful, efforts to locate the victim").

On the other side of the Lloyd balancing test, there was minimal discussion of Pennycooke's interest in testing the veracity of Jones's hearsay statement, although that interest was significant.  Jones's statement was central to the ultimate "A" violation ruling, and the contents of her statement were her personal observations and thus susceptible to questions about accuracy and reliability.  See Comito, 177 F.3d at 1171 (holding that the weight to be given the right to confrontation depends primarily on the importance of the evidence to the ultimate decision and the nature of the facts to be proven by the hearsay).  The apparent failure to meaningfully consider Pennycooke's confrontation interest was error.  See Wheeler, 130 F.4th at 416 (observing that analyzing the Government's side of the equation is not sufficient; the releasee's interest must be considered and balanced against it).

### III.

The District Court's decision was not consistent with the sound exercise of discretion because it did not assess whether the Government made a sufficient showing of

8

good cause to outweigh Pennycooke's due process right to confront Jones. See Rose, 152 F.4th at 158. We cannot say that this error was harmless beyond a reasonable doubt. Barksdale, 98 F.4th at 89; cf. United States v. Mosley, 759 F.3d 664, 669 (7th Cir. 2014). We therefore will vacate the District Court's judgment revoking supervised release and remand this matter for further proceedings.[5]

---

[5] Pennycooke also claims that the District Court erroneously considered the factors set forth in 18 U.S.C. § 3553(a)(2)(A) when it fashioned his sentence for the supervised release violation. Consideration of the § 3553(a)(2)(A) factors was permissible under our Court's precedent at the time of the sentencing. See United States v. Young, 634 F.3d 233, 238–39 (3d Cir. 2011). But after the briefs were filed, the Supreme Court issued its opinion in Esteras v. United States, 145 S. Ct. 2031 (2025), in which it held that "[d]istrict courts cannot consider § 3553(a)(2)(A) when revoking supervised release." Id. at 2040. Pennycooke did not raise this objection during the revocation hearing, so the claim is subject to plain error review. Id. at 2045. Given our determination, we need not decide whether Pennycooke has established that the District Court committed plain error under Esteras.